[No. B010865. Second Dist., Div. Four. Apr. 8, 1986.]

MURRAY O. KANE, Plaintiff and Appellant, v.
REDEVELOPMENT AGENCY OF THE CITY OF HIDDEN HILLS,
Defendant and Appellant.

COUNSEL

Weiser, Kane, Ballmer & Berkman and R. Bruce Tepper, Jr., for Plaintiff and Appellant.

Helm & Lemieux and Wayne Lemieux for Defendant and Appellant.

OPINION

ARGUELLES, J.—We are called upon to decide whether one who has never been a party to the challenged administrative environmental review process of a public agency is excepted from compliance with the doctrine of exhaustion of administrative remedies as a "member of the affected public" in the absence of facts showing how he was "affected" and that he could not reasonably have been a party to the administrative review process. We conclude that such a person does not qualify as a "member of the affected public" for purposes of invoking the exhaustion exception.

The Redevelopment Agency of the City of Hidden Hills (Agency) appeals a judgment granting a peremptory writ of mandate to compel it and another public entity and city officials[1] to set aside a city ordinance and companion resolutions adopting and approving the Hidden Hills Redevelopment Project for Agency's failure to comply with the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21100 et seq.). Murray O. Kane (Kane) appeals the order denying his motion for attorneys' fees under Code of Civil Procedure section 1021.5.

We reverse the judgment and remand the matter with directions to dismiss the proceeding.

FACTS

The City of Hidden Hills, a suburban community located on the western edge of the County of Los Angeles in the San Fernando Valley, was designated by the city council as a redevelopment project area for the purpose of abating blight in the form of seasonal storm flooding, fire danger and freeway noise. The bulk of the project was to consist of approximately $5 million in flood control work.

---

[1]The City Council of the City of Hidden Hills and the individual city council members who were members of the Redevelopment Agency of the City of Hidden Hills were also named as respondents below but are not parties to this appeal.

The city council adopted a redevelopment plan which necessarily required the preparation of an environmental impact report (EIR) by Agency.

Although he was not a resident or owner of property in the City of Hidden Hills, Kane filed a petition for the writ of mandate and for an injunction challenging the city's environmental review pursuant to CEQA "to ensure that the City fulfills its legal responsibilities in connection with its Redevelopment Project." Kane also sought attorneys' fees under California's private attorney general statute (Code Civ. Proc., § 1021.5).

The trial court entered judgment on peremptory writ of mandate in favor of Kane and issued the peremptory writ of mandate but denied Kane's request for attorneys' fees.

The appeals followed.

Agency raises contentions on the issues of standing, exhaustion of administrative remedies and the adequacy of its EIR under CEQA and the "Guidelines for the Implementation of the California Environmental Quality Act" (State CEQA Guidelines) (Cal. Admin. Code, tit. 14, § 15000 et seq.).

Kane contends that the trial court erred in refusing to grant him requested attorneys' fees.

For the reasons discussed below, we find the procedural issues of standing and exhaustion dispositive of the appeals.

DISCUSSION

*I. Standing*

■ The concept of standing has been described as follows: "Elementary justice requires that one who is hurt by illegal action should have a remedy. [¶] The central principle that grows out of that observation is also very simple: *One who is adversely affected in fact by governmental action has standing to challenge its legality, and one who is not adversely affected in fact lacks standing.*" (4 Davis, Administrative Law Treatise (2d ed. 1983) Standing, § 24:2, p. 212.)

■ Agency contends that Kane lacks standing to bring this action because he failed to allege: (1) that he was acting in the capacity of a class representative; (2) that the environmental impacts of the Agency's project extend beyond the Agency's boundaries; or (3) that he is a resident or

property owner within the area affected by the actual environmental reach of this project. We disagree.

Kane alleged in his petition that he was "within the class of persons beneficially interested" in Agency's "faithful performance of its legal duty" and was "a citizen and resident of the County of Los Angeles."

Such allegations are sufficient to satisfy the liberal standing requirements for private individuals acting in the public interest to institute proceedings to enforce the provisions of CEQA. (See *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 272 [118 Cal.Rptr. 249, 529 P.2d 1017]; Myers, *Standing in Public Interest Litigation: Removing the Procedural Barriers* (1981) 15 Loyola L.A. L.Rev. 1, 17-19.) As our Supreme Court explained in *Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d at p. 272: "Effects of environmental abuse are not contained by political lines; strict rules of standing that might be appropriate in other contexts have no application where broad and long-term effects are involved. [Citation.]"

Whether or not our Supreme Court, by these words, intended to abrogate or merely "liberalize" traditional standing requirements in actions or proceedings brought under CEQA we cannot say. But clearly Kane cannot be said to lack standing to institute the judicial proceeding against Agency.

The same cannot be said, however, about Kane's apparent failure to exhaust administrative remedies, which we will now discuss.

## II. Exhaustion of Administrative Remedies

Agency next contends that Kane failed to exhaust administrative remedies and is, therefore, barred from bringing and maintaining the proceeding for the following reasons: (1) "Kane failed to participate in any way in the administrative proceedings leading up to the approval of the EIR"; and (2) "Prior to the filing of the petition herein, no one objected to the form or content of the EIR or the procedures employed in preparing, reviewing and approving the EIR." We agree.

■ Actions or proceedings brought to enforce CEQA under Public Resources Code section 21167 are subject to the doctrine of exhaustion of administrative remedies, "which precludes judicial review of issues, legal and factual, which were not first presented at the administrative agency level. (*Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412 [194 Cal.Rptr. 357, 668 P.2d 664].)" (*Coalition for Student Action* v. *City of Fullerton* (1984) 153 Cal.App.3d 1194, 1197 [200 Cal.Rptr. 855]; see *San Bernardino Valley Audubon Society, Inc.* v. *County*

*of San Bernardino* (1984) 155 Cal.App.3d 738, 747-748 [202 Cal.Rptr. 423]; Pub. Resources Code, § 21177.[2])

▪ Kane argues that he is excepted from compliance with the exhaustion doctrine under the exception set forth in *Environmental Law Fund, Inc.* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105 [122 Cal.Rptr. 282]. Under that exception, "the failure of a private person to exhaust an administrative remedy, against governmental action taken in an administrative proceeding *to which he was not a party,* does not bar him from seeking judicial relief from such action by way of enforcing *rights which he holds as a member of the affected public.*" (At p. 114, italics added.)

▪ CEQA, by its own terms, is intended to further the public interest. As one appellate court decision recently recognized:

"CEQA demonstrates a legislative intent to maintain 'a quality environment for the people of this state' (§ 21000, subd. (a)), and to ensure that all state agencies which regulate private conduct 'found to affect the quality of the environment' shall regulate such conduct 'so that major consideration is given to preventing environmental damage, while providing a decent home and satisfying living environment for every Californian.' (§ 21000, subd. (g); see § 21001.) CEQA is 'perceived as a logical and carefully devised program of wide application and broad public purpose. . . .' (*Natural Resources Defense Council, Inc.* v. *Arcata Nat. Corp.* [1976] 59 Cal.App.3d [959] at p. 966 [131 Cal.Rptr. 172]; *County of Inyo* v. *Yorty* (1973) 32 Cal.App.3d 795, 810 [108 Cal.Rptr. 377].) The act is to be interpreted broadly in order to afford the fullest protection to the environment consistent with the reasonable scope of the statutory language. [Citations.]" (*Environmental Protection Information Center, Inc.* v. *Johnson* (1985) 170 Cal.App.3d 604, 615 [216 Cal.Rptr. 502].)

However, that broad public interest intent cannot be the sole basis for allowing any California resident with an objection to a public agency's en-

---

[2]Public Resources Code section 21177 reads in part as follows: "(a) No action may be brought pursuant to Section 21167 unless the alleged grounds for noncompliance with this division were presented to the public agency orally or in writing by any person. [¶] (b) No person shall maintain an action or proceeding unless that person objected to the approval of the project orally or in writing. [¶] . . . . [¶] (e) This section does not apply when there was no public hearing or other opportunity for members of the public to raise objections prior to the approval of the project or when the public agency failed to give the notice required by law."

Section 21177, which became effective January 1, 1985, and is not, therefore, controlling in the present matter, nevertheless provides evidence of the Legislature's support for the judicially-created doctrine of exhaustion of administrative remedies under CEQA because it reflects the express intent of the Legislature "to codify the exhaustion of administrative remedies doctrine . . . [but not] to limit or modify any exception to the doctrine . . . contained in case law." (Stats. 1984, ch. 1514, § 14.5.)

vironmental review under CEQA, but without any private interest to vindicate, to avoid the exhaustion doctrine and file a judicial action or proceeding; otherwise, the exhaustion doctrine would be reduced to mere sham, easily avoided by boilerplate allegations.

As Kane would have it, the *Corte Madera* exception is the leviathan that would swallow the Jonah of the exhaustion doctrine under CEQA—a result that neither the courts nor the Legislature has intended.

We must determine, therefore, whether Kane sufficiently alleged and proved that he was "a member of the affected public" within the meaning of *Corte Madera*'s exception to the exhaustion doctrine.

■■■■■ Broadly applying the *Corte Madera* public interest exception to excuse failure by any member of the public to notify the responsible public agency of its alleged noncompliance with CEQA prior to bringing a judicial action or proceeding would undermine the prominent role of public participation in the administrative environmental review process intended in CEQA.[3]

One commentator has explained the importance of public participation as intended in the public review procedure of CEQA as follows:

"One of the strongest themes running through the body of CEQA case law is the beneficial effect of public participation on the environmental review process. The State EIR [CEQA] Guidelines detail the steps for circulating negative declarations and draft EIR's to the public and governmental agencies for their comments. *The purposes of public review are declared to be sharing expertise, disclosing agency analyses, checking for accuracy, detecting omissions, discovering public concerns, and soliciting counterproposals.* The Guidelines also advise that each public agency 'should include provisions in its CEQA procedures for *wide public involvement*' in order to receive and evaluate public reactions.

"The mechanics of the prescribed public review procedures are described specifically. Notice of the availability of a negative declaration or draft EIR must be given to organizations and individuals who have requested it. Most importantly, the lead agency must evaluate comments on environmental issues received from the public or governmental agencies and prepare a writ-

---

[3] "[T]he principal purpose of the doctrine of exhaustion of administrative remedies is to afford administrative tribunals the opportunity to decide in a final way matters within their area of expertise prior to judicial review. (3 Davis, Administrative Law Treatise (1958) Exhaustion of Administrative Remedies, § 20.06, p. 92.)" (*San Bernardino Valley Audubon Society, Inc.* v. *County of San Bernardino, supra,* 155 Cal.App.3d 738, 748.)

ten response. The response should describe the disposition of issues raised, for example, revising the project to eliminate environmental impacts. If this is not done, the agency must give 'reasons why specific comments and suggestions were not accepted.' Good faith and reasoned analysis are required; responses that are '[c]onclusory statements unsupported by factual information' are insufficient.

*"The breadth of these public review requirements attest to the validity of the comment by the preparers of the Guidelines that '[p]ublic participation is an essential part of the CEQA process.' This position also is fully supported by case law; the State EIR [CEQA] Guidelines merely echo numerous judicial statements about the importance of public participation.* On the basis of these statements, the courts have overturned decisions based on EIR's that did not respond fairly to both public and agency comments." (Selmi, *The Judicial Development of the California Environmental Quality Act* (1984) 18 U.C. Davis L.Rev. 197, 245-246, fns. omitted, italics added; see Cal. Admin. Code, tit. 14, §§ 15083, 15087, 15200-15209.)

■ In each case the importance of participation in the environmental review process and the doctrine of exhaustion of administrative remedies must be balanced against the importance of belated participation in the process by a qualified member of the affected public, upon an appropriate showing.

In that balancing process, some consideration must be given to a competing concern raised in *Corte Madera* that application of the exhaustion doctrine against all persons who were not parties to the administrative proceedings, "by reason of their 'default' . . ., would mean in effect the imputation of their 'default' to the public in the absence of any factual basis for such imputation. In general, the doctrine would thus operate to bar the public from redressing a public wrong . . . in perpetuity . . . by insulating the . . . action from judicial review." (*Environmental Law Fund, Inc.* v. *Town of Corte Madera, supra,* 49 Cal.App.3d at p. 114.)[4]

---

[4]We note that such a balancing of competing factors typifies difficult questions of exhaustion. As one commentator has stated: "[T]he major factors that affect an exhaustion decision may be easily identified. Pulling away from requirement of exhaustion are combinations of such factors as irreparable injury to a party from pursuing the administrative remedy, clear absence of agency jurisdiction, clear illegality of the agency's position, a dispositive question of law peculiarly within judicial competence, the futility of exhaustion, and expense and awkwardness of the administrative proceeding as compared with inexpensive and efficient judicial disposition of the controversy. [¶] Pulling toward requirement of exhaustion are combinations of such factors as need for factual development, importance of reflecting agency's expertise or policy preferences in the final result, probability that the agency will satisfactorily resolve the controversy without judicial review, protection of agency processes from impairment by avoidable interruption, conservation of judicial energy by avoiding piecemeal or interlocutory review, and providing the agency opportunity to correct its own errors." (4 Davis, Administrative Law Treatise (2d ed. 1983) Exhaustion, § 26:1, pp. 414-415.)

■ In applying the above principles to the present case, we conclude that a factually unsupported allegation that the party challenging the environmental review process is acting merely as a concerned member of the public, without more, should not qualify that party as "a member of the affected public" under the *Corte Madera* exception to the exhaustion doctrine. Here, Kane failed to allege and prove *any* facts bringing him within the "affected public" exception.

■ Accordingly, we find that Kane failed to exhaust his administrative remedies and the trial court, therefore, was without jurisdiction to adjudicate the merits of the mandate petition. (See *Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 981 [88 Cal.Rptr. 533].)

It follows that we need not and do not discuss Agency's contentions as to the adequacy of its EIR, and related issues, or Kane's contentions with respect to his appeal of the order denying him attorneys' fees under Code of Civil Procedure section 1021.5.

DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court which is directed to recall the peremptory writ of mandate, vacate its judgment on the writ, and dismiss the proceeding for lack of jurisdiction.

Woods, P. J., and McClosky, J., concurred.

The petition of plaintiff and appellant for review by the Supreme Court was denied July 24, 1986.